**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TELES AG, *et al.*,<br><br>           Plaintiffs,<br><br>           v.<br><br>DAVID J. KAPPOS, Under Secretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office,<br><br>           Defendant. | Civil Action No. 11-00476 (BAH)<br>Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

      This suit, arising out of the United States Patent and Trademark Office's (the "PTO")

rejection of claims 34-36 and 38 of U.S. Patent No. 6,954,453 B1, presents a question of

statutory construction that has not yet been addressed by this or other Circuits.  The plaintiffs are

patent owners, TELES AG and Sigram Schindler Beteiligungsgesellschaft mbH (collectively,

"Teles"), who brought suit under section 306 of the Patent Act, 35 U.S.C. § 306, against David J.

Kappos, Under Secretary of Commerce for Intellectual Property and Director of the PTO, in his

official capacity, to contest an adverse decision of the PTO's Board of Patent Appeals and

Interferences (the "BPAI").  The defendant has moved to dismiss the Complaint, arguing that

this Court lacks subject matter jurisdiction, because, following amendments to the Patent Act in

1999, "patent owners" may appeal adverse *ex parte* reexamination decisions by the BPAI only to

the United States Court of Appeals for the Federal Circuit and may not file a civil action in this

Court.[1]  For the reasons explained below, the defendant's Motion to Dismiss is granted and this

case shall be transferred to the U.S. Court of Appeals for the Federal Circuit pursuant to 28

U.S.C. § 1631.[2]

## I.      BACKGROUND

### A.  Statutory Framework

At issue in this case is the import of amendments made in 1999 to certain provisions of

the Patent Act and how those amendments affect the right of a patent owner to seek judicial

review following an *ex parte* reexamination proceeding.  The plaintiffs claim the 1999

amendments are either irrelevant or merely "housekeeping" measures while the defendant claims

these amendments were substantive and removed jurisdiction from this Court.  Review of the

statutory framework, including the chronology of amendments made to key provisions, helps to

inform resolution of these divergent characterizations of the 1999 amendments.

In 1980, Congress created the reexamination system to allow patent owners or a third-

party requester to confirm or challenge a patent.  This newly created reexamination system

"enabled the PTO to recover administrative jurisdiction over an issued patent in order to remedy

---

[1] In 2009, plaintiff Sigram Schindler Beteiligungsgesellschaft mbH filed a declaratory judgment action in the Eastern District of Virginia asking the Court to decide the jurisdictional issue at stake in this case.  The Eastern District of Viginia found that the issue was not yet ripe for review because the BPAI had not yet made its decision in the *ex parte* reexamination proceeding that is the subject of this lawsuit.  *Sigram Schindler Beteiligungsgesellschaft MBH v. Kappos*, 675 F. Supp. 2d 629, 641-42 (E.D. Va. 2009) ("*Sigram Schindler*").  This jurisdictional question is also presently before at least two other district judges in the United States District Court for the District of Columbia:  *Bally Gaming v. Kappos*, No. 10-cv-1906 (JEB), and *Power Integrations v. Kappos*, No. 11-cv-1254 (RWR).  In *Bally Gaming*, the PTO has filed a motion to dismiss based on the same jurisdictional question at issue here.  *See* No. 10-cv-1906, ECF No. 18.  Proceedings related to the motion to dismiss are stayed pending a final judgment on the interference claims against private defendants in the case.  *See* No. 10-cv-1906, Minute Order (Sept. 16, 2011).  In *Power Integrations*, the plaintiff moved for partial summary judgment with respect to whether the district court has jurisdiction under section 145 to review an adverse BPAI reexamination decision.  *See* 11-cv-1254, ECF No. 8.  The defendant has also moved to dismiss for lack of subject matter jurisdiction, or alternatively, a transfer of the case to the Federal Circuit.  *See* 11-cv-1254, ECF No. 15.  As of the date of this opinion, the motions in *Power Integrations* remain pending.

[2] The plaintiffs have requested a transfer to the Federal Circuit if this Court finds that it does not have jurisdiction.  Pls.' Mem. in Opp. to Def.'s Mot. to Dismiss ("Pls.' Mem.") at 16.  The defendant does not object to such a transfer.  Def.'s Reply in Supp. of Def.'s Mot. to Dismiss ("Def.'s Reply") at 10.

any defects in the examination which that agency had initially conducted and which led to the grant of the patent," and served "an important public purpose . . . to revive United States industry's competitive vitality by restoring confidence in the validity of patents issued by the PTO." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 601 (Fed. Cir. 1985).  Among the anticipated benefits of the reexamination process were to "settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases;" "allow courts to refer patent validity questions to the expertise of the Patent Office;" and "reinforce investor confidence in the certainty of patent rights by affording the PTO a broader opportunity to review doubtful patents." *Id*. at 602 (citations and quotation marks omitted).  According to a report from the House of Representatives that accompanied the 1980 legislation: "Reexamination will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation."  H. R. Rep. 96-1307(I), at 3-4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463.  In brief, "[t]he reexamination statute permits the patent owner or any other person to (1) cite to the Office patents or printed publications as prior art pertaining to the validity of an issued patent, and (2) request that the Office reexamine any claim of that patent on the basis of the cited prior art."  H. R. Rep. No. 105-39, at 36 (1997).

The plaintiffs bring their claims under section 306 of the Patent Act, 35 U.S.C. § 306, the text of which remained the same from 1980, when the reexamination process was created, until recent amendments made in 2011.[3]  Prior to the 2011 amendments, section 306 stated, in its entirety:

> The patent owner involved in a reexamination proceeding under this chapter may appeal under the provisions of section 134 of this title, and may seek court review under the provisions of sections 141 to 145 of this title, with respect to any decision adverse to the

---

[3] Section 306 was amended in 2011, as discussed *infra*, but the amendments are not retroactive.

patentability of any original or proposed amended or new claim of
the patent.

35 U.S.C. § 306 (2006); *see* Compl. ¶ 14.

The reexamination system was perceived to have "only limited success." S. Rep. No. 105-42, at 57 (1997). Congress, therefore, responded with periodic amendments to make the reexamination process "a truly viable alternative for resolving questions of patent validity." S. Rep. No. 110-259, at 19 (2008). In 1999, Congress enacted the American Inventors Protection Act ("AIPA"), Pub. L. No. 106-113, 113 Stat. 1501 (1999), as part of the Intellectual Property and Communications Omnibus Reform Act of 1999, which resulted in amendments to the Patent Act and created an *inter partes* reexamination system to supplement the existing reexamination process.[4] While the 1999 amendments did not explicitly alter section 306, the 1999 amendments resulted in changes to sections 134, 141, and 145, parts of the Patent Act referenced in section 306.[5] These three sections, all part of the 1952 Patent Act, had not been revised in any way at the time of the creation of the reexamination system in 1980 and, until 1999, only specifically referenced "patent applicants," not "patent owners." The changes made to these three sections 134, 141 and 145 are discussed in detail below.

Provisions for administrative appeal of an initial examination of a patent application or a reexamination are provided for in 35 U.S.C. § 134, which was subject only to a minor change in 1984 before it was amended in 1999. Before the 1999 amendments, section 134 read in full: "An applicant for a patent, any of whose claims has been twice rejected, may appeal from the

---

[4] As the defendant explains, "[r]examination can be either *ex parte*, under the provisions of 35 U.S.C. §§ 302-307, or *inter partes*, under the provisions of 35 U.S.C. §§ 311-318. The primary difference between the two is that a third-party requester can actively participate in an *inter partes* reexamination, but not in an *ex parte* reexamination. 35 U.S.C. §§ 305, 314(b)(2). Another significant difference is that a third-party who requests an *inter partes* reexamination can appeal an examiner's decision favorable to patentability to the Board [under 35 U.S.C. § 134]." Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss (Def.'s Mem.) at 4 (emphasis omitted).

[5] The versions of these provisions referenced below are the versions in place after the 1999 amendments, and before the most recent amendments in 2011, unless indicated otherwise.

decision of the primary examiner to the Board of Patent Appeals and Interferences, having once

paid the fee for such appeal." 35 U.S.C. § 134 (1994).  That section was updated in the 1999

amendments to enumerate three separate categories of parties who may appeal to the BPAI and

expressly referenced for the first time the reexamination process created in 1980 and the new

*inter partes* proceedings created with the 1999 amendments.  After the 1999 amendments,

section 134 read in full:

> **(a)  Patent applicant.**--An applicant for a patent, any of whose claims has been twice rejected, may appeal from the decision of the primary examiner to the Board of Patent Appeals and Interferences, having once paid the fee for such appeal.

> **(b)  Patent owner.**--A patent owner in any reexamination proceeding may appeal from the final rejection of any claim by the primary examiner to the Board of Patent Appeals and Interferences, having once paid the fee for such appeal.

> **(c)  Third-party.**--A third-party requester in an inter partes proceeding may appeal to the Board of Patent Appeals and Interferences from the final decision of the primary examiner favorable to the patentability of any original or proposed amended or new claim of a patent, having once paid the fee for such appeal.

35 U.S.C. § 134 (2006) (emphasis in original).

The rights for either patent owners or patent applicants to appeal from an adverse BPAI

decision to the Court of Appeals for the Federal Circuit are enumerated in sections 141 to 144.

Similarly to section 134, before the 1999 amendments, section 141 had been subject to only

minor revisions since 1952 and did not specifically reference "patent owners."  According to the

relevant part of the version of section 141 in place prior to the 2011 amendments:

> An applicant dissatisfied with the decision in an appeal to the Board of Patent Appeals and Interferences under section 134 of this title may appeal the decision to the United States Court of Appeals for the Federal Circuit.  By filing such an appeal the applicant waives his or her right to proceed under section 145 of this title.  *A patent owner, or a third-party requester in an inter*

> partes reexamination proceeding, who is in any reexamination
> proceeding dissatisfied with the final decision in an appeal to the
> Board of Patent Appeals and Interferences under section 134 may
> appeal the decision only to the United States Court of Appeals for
> the Federal Circuit.

35 U.S.C. § 141 (2006) (emphasis added).[6]

As with sections 134 and 141, before the 1999 amendments, section 145 had only been subject to minor revisions since 1952. Section 145 was also updated in the 1999 amendments but, by contrast to sections 134 and 141, no express reference to patent owners was added. Instead, section 145 was amended to confirm an express application to patent applicants. Specifically, the only change to section 145 made in 1999 was to limit the reference to § 134 to "§ 134(a)," the section pertaining exclusively to patent applicants. Section 145, in relevant part, provides that "[a]n *applicant* dissatisfied with the decision of the Board of Patent Appeals and Interferences in an appeal under section 134(a) of this title may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by *civil action* against the Director in the United States District Court for the District of Columbia . . . ." 35 U.S.C. § 145 (2006) (emphasis added). Unlike an appeal to the Federal Circuit, plaintiffs bringing a "civil action" under 35 U.S.C. § 145 are not limited to the record made before the PTO but may undertake discovery and introduce new evidence. *See* Compl. ¶ 16.

As noted, in 1999, when sections 134 and 141 were changed to specifically reference patent owners, section 145 continued to reference only "patent applicants." A *patent applicant* thus has two ways of appealing an adverse decision of the BPAI on a patent application. The

---

[6] The 2002 amendment of section 141 added the clause that a third-party requester in an *inter partes* reexamination proceeding may seek judicial review of an adverse BPAI decision in the United States Court of Appeals for the Federal Circuit. *See* Pls.' Mem. at 9 n.7; Def.'s Reply at 3 n.1. The version of this section in place after the 1999 amendments, and before the 2002 amendment, stated, in relevant part: "A patent owner in any reexamination proceeding dissatisfied with the final decision in an appeal to the Board of Patent Appeals and Interferences under section 134 may appeal the decision only to the United States Court of Appeals for the Federal Circuit." 35 U.S.C. § 141 (2000).

applicant may appeal directly to the United States Court of Appeals for the Federal Circuit. *See* 35 U.S.C. § 141 (2006) ("An applicant dissatisfied with the decision in an appeal to the [BPAI] under section 134 of this title may appeal the decision to the United States Court of Appeals for the Federal Circuit."). The patent applicant may also bring a civil action under 35 U.S.C. § 145 (2006) ("An applicant dissatisfied with the decision of the [BPAI] in an appeal under section 134(a) of this title may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in the United States District Court for the District of Columbia . . . .").

The defendant argues that, following the 1999 amendments, this Court has no jurisdiction over the claims of patent owners because the 1999 amendments changed section 145 to refer specifically to 35 U.S.C. § 134*(a)*, which pertains only to patent applicants, not patent owners. Def.'s Mem. at 7. The defendant further argues that 35 U.S.C. § 306 allows a party to seek judicial review only to the extent that it is allowable under the provisions of section 134 and sections 141 to 145. *Id*. at 9. Thus, the defendant argues, section 306 cannot provide this Court jurisdiction to review a patent owner's appeal or civil action challenging an adverse BPAI decision because sections 134, 141, and 145 do not provide this Court any such jurisdiction. *Id*. at 9-10.

**B.  Factual and Procedural History**

The plaintiffs are German companies that collectively "own all substantial rights" in U.S. Patent No. 6,954,453 B1, which is entitled "Method for Transmitting Data in a Telecommunications Network and Switch for Implementing Said Method" (the "Schindler Patent"). Compl. ¶ 6. The Schindler Patent was issued on October 11, 2005, based on a patent application filed October 7, 1997, which claimed priority to a German patent application filed

October 7, 1996.  Compl. ¶ 7.  The Schindler Patent consists of a method for transmitting data across a telecommunications network.  Compl. ¶¶ 6, 8.  It "discloses and claims, among other things, switching apparatus for routing a telephone call from a first end terminal to a second end terminal, selectively by line switching and packet switching."  Compl. ¶ 8.[7]

Third parties may request that the PTO reexamine the "substantive patentability" of a patent that the PTO has issued.  Def.'s Mem. at 4.  Pursuant to the request of a Teles competitor, the PTO conducted an *ex parte* reexamination of claims 34-36 and 38 of the Schindler Patent beginning in 2007.  Compl. at ¶ 9; Pls.' Mem. at 4.  Claims are components of a patent application that "define the scope of exclusivity the patent will provide to its owner."  Def.'s Mem. at 2.  The PTO concluded that claims 34-36 and 38 of the Schindler Patent "would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  Compl. ¶ 10 (*citing* 35 U.S.C. § 103(a)).  The BPAI affirmed a final rejection of claims 34-36 and 38 of the Schindler Patent on January 7, 2011.  *See id.*; Pls.' Mem. at 6.

The plaintiffs filed a Complaint in this Court on March 4, 2011, seeking review of the BPAI decision pursuant to 35 US.C. § 306.  Compl. ¶¶ 6, 14.  Plaintiffs argue that the inventors of the Schindler Patent were properly granted a patent for the subject matter described in claims 34-36 and 38.  They seek review in district court in order to take advantage of this Court's *de novo* review, as well as discovery mechanisms available through the Federal Rules of Civil Procedure that are not available during appellate review at the Federal Circuit.  Compl. ¶ 17; Pls.' Mem. at 6-7, 10-11; *see also Dome Patent, L.P. v. Doll*, No. 07-1695 (PLF), slip. op. at 6

---

[7] The plaintiffs detail the background and substance of the Schindler Patent at considerable length in their brief.  The Court does not have jurisdiction over this matter so it need not delve any deeper into these details here.  *See* Pls.' Mem. at 1-6.

n.5 (D.D.C. Mar. 30, 2009) (noting that "the availability of discovery under the Federal Rules of Civil Procedure is a significant incentive for parties challenging PTO action to file suit in United States district courts rather than in the Federal Circuit").  The plaintiffs believe that they will be able to demonstrate through discovery that their claimed invention was nonobvious, because the rules of discovery allow for the compelled production of evidence that was unavailable during the *ex parte* reexamination proceeding.  Compl. ¶¶ 12-13, 17.

In response to the plaintiffs' Complaint, the defendant has moved to dismiss this action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  ECF No. 9.  The defendant asserts that this court lacks subject matter jurisdiction under section 306 to hear a patent owner's appeal of an adverse BPAI *ex parte* reexamination decision.  Def.'s Mem. at 2.  For the reasons explained below, this motion is granted and, at the parties' request, this case shall be transferred to the U.S. Court of Appeals for the Federal Circuit.

## II.     STANDARD OF REVIEW

On a motion to dismiss for lack of subject matter jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence.  *Mostofi v. Napolitano*, No. 11-0727, 2012 U.S. Dist. LEXIS 9563, at *4 (D.D.C. Jan. 27, 2012) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Ki Sun Kim v. United States*, No. 08-01660, 2012 U.S. Dist. LEXIS 2094, at *8 (D.D.C. Jan. 9, 2012); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  As the Supreme Court has explained "many times," the "district courts of the United States . . . are 'courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute.'"  *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (*quoting Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)) (internal quotation marks

omitted); *see also Micei Int'l v. DOC*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) ("[T]wo things are necessary to create jurisdiction in an Article III tribunal other than the Supreme Court . . . The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it*.") (internal citations and quotation marks omitted).  For this reason, a "federal district court's initial obligation is to ascertain its subject matter jurisdiction." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 45 (D.D.C. 2009), *aff'd*, No. 10-5015, 2010 U.S. App. LEXIS 13869 (D.C. Cir. July 6, 2010).  When a court lacks subject matter jurisdiction, it must dismiss the case. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 48 (D.D.C. 2011); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

In statutory construction, this Court is guided by the well-established principle that analysis begins with the plain language of a statute, because "when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Metro. Stevedore Co. v. Rambo*, 515 U.S. 291, 295 (1995); *see also Butler v. DOJ*, 492 F.3d 440, 443 (D.C. Cir. 2007) ("In construing a statute, the court begins with the plain language of the statute") (citation omitted); *AT&T v. FCC*, 452 F.3d 830, 835 (D.C. Cir. 2006) (explaining that the Court employs "traditional tools of statutory construction . . . beginning, as always, with the plain language of the statute.") (citations omitted).  Furthermore, a cardinal principle of statutory construction is that the Court must "give meaning to every clause of the statute." *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

## III.  DISCUSSION

Prior to the 1999 amendments, the parties are in agreement that a patent owner had the right to bring a civil action challenging the BPAI's *ex parte* reexamination decision. *See* Def.'s Mem at 8; *see generally* Pls.' Mem.  The plaintiffs argue that the 1999 amendments did not

modify the substantive rights afforded to patent owners, while the defendant argues that the amendments unambiguously deny a patent owner the right to bring an action in this Court.  This Court agrees that the 1999 amendments, which for the first time revised sections 134 and 141 to specifically refer to the rights of patent owners, as opposed to patent applicants, while restricting coverage of section 145 to patent applicants, removed this Court's jurisdiction to hear the plaintiffs' claims.

### A.  Pre-1999 Amendments

Before the 1999 amendments, courts read section 306 as providing patent applicants and patent owners challenging adverse decisions of the BPAI two options for court review: "(i) filing an appeal in the Federal Circuit, where review is made solely on the administrative record; or (ii) filing a civil action in the D.C. District Court, where discovery is permitted and a patentability determination is made by the district court *de novo*."  *Sigram Schindler*, 675 F. Supp. 2d at 631.  These two "avenues of court review were mutually exclusive."  *Id*.  If a party filed an action in either court, the party waived its right to appeal in the other court.  *Id*.

Prior to the 1999 amendments, 35 U.S.C. § 134, in its entirety, as noted *supra*, stated that "[a]n applicant for a patent, any of whose claims has been twice rejected, may appeal from the decision of the primary examiner to the Board of Patent Appeals and Interferences, having once paid the fee for such appeal."  35 U.S.C. § 134 (1994).  The pre-1999 version of 35 U.S.C. § 145 referenced section 134 in its entirety.  *See* 35 U.S.C. § 145 (1994).  Neither of these statutory provisions made reference to "patent owners."

In *Joy Technologies*, a district judge in this Circuit concluded that, "viewing section 145 as a whole, it is clear that 'applicant' in that statute applies both to a patent applicant dissatisfied with the decision of the PTO on his initial application and to a patent owner dissatisfied with the

PTO's decision in a reexamination proceeding." *Joy Technologies v. Manbeck*, 751 F. Supp. 225, 235-36 (D.D.C. 1990) (Bennett, J.), *aff'd*, 959 F.2d 226, 229 (Fed. Cir. 1992). The *Joy Technologies* court therefore concluded that 35 U.S.C. § 306 enabled a "patent owner" to bring a civil action to contest the BPAI's reexamination decision. *Id.*; *see also Sigram Schindler*, 675 F. Supp. 2d at 631-32 (prior to the 1999 amendments, "patent owners involved in *ex parte* reexamination proceedings were authorized to seek court review of" BPAI decisions under section 306); *Syntex (U.S.A.) Inc. v. U.S. Patent & Trademark Office*, 882 F.2d 1570, 1572 (Fed. Cir. 1989) ("Under the patent statute, the patent owner is given a right to review of an examiner's final reexamination decision, 35 U.S.C. § 306 (1982), first before the PTO Board of Patent Appeals and Interferences under section 134, and then either by direct appeal of the board's decision to this court under section 141, or by suit against the PTO in district court with a right of appeal to this court under section 145."); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) (noting in dicta, with no jurisdictional analysis, that "[t]he party that receives an adverse decision from the PTO's pending reexamination is not without redress. That party may appeal to the Board of Patent Appeals and Interferences. 35 U.S.C. § 134. When administrative remedies have been exhausted, that party may appeal to either this court or to the Federal Circuit. 35 U.S.C. § 306."), *aff'd* 182 Fed. Appx. 988 (Fed. Cir. 2006). The law has changed since the *Joy Technologies* court issued its opinion, however, and its reasoning with respect to 35 U.S.C. § 306 no longer applies.

### B.  The 1999 Amendments

Plaintiffs argue that, even after the 1999 amendments, patent owners possess the right to seek district court review of a BPAI *ex parte* reexamination decision under section 306 of the Patent Act. The plaintiffs make four primary statutory construction arguments; namely, that (1)

the fact that section 145 does not grant a right of action to patent owners to bring an action in this Court is irrelevant to this Court's jurisdictional analysis; (2) section 141 applies only to "appeals" to the Federal Circuit, not to the right to bring a civil action under section 145; (3) the plain language of section 306 provides jurisdiction regardless of changes to sections 141 and 145; and (4) section 315 shows that Congress did not intend to remove this Court's jurisdiction under section 306.

The defendant counters that the 1999 amendments to sections 134, 141, and 145 removed this Court's jurisdiction to hear claims by patent owners under section 306.  Specifically, the defendant argues that the 1999 amendments removed this Court's jurisdiction because the 1999 amendments changed (1) section 145 to apply only to patent applicants, and (2) section 141 to restrict patent owners "in *any* reexamination proceeding" to appeal an adverse decision of the BPAI "*only* to the United States Court of Appeals for the Federal Circuit."  Def.'s Mem. at 6-7 (emphasis added).  The defendant further argues that section 306 should be read *in pari materia* with the current versions of sections 134, 141, and 145, and thus understood not to provide this Court with jurisdiction over the patent owners' claims.[8]  *Id*. at 9.  The Court agrees.  As explained in more detail below, the plain meaning of the 1999 amendments indicates that this Court does not have jurisdiction over the plaintiffs' claims.  The Court first analyzes the statutory construction of sections 134 and 145, and then addresses the plaintiffs' statutory construction arguments below.

---

[8] Following the 1999 amendments, the PTO promulgated a regulation, 37 C.F.R. § 1.303, which stated that no civil action remedy was available under 35 U.S.C. § 145 for patent owners in the case of *ex parte* reexamination proceedings filed on or after November 29, 1999.  This regulation was the impetus for Sigram Schindler Beteiligungsgesellschaft mbH's declaratory judgment action in *Sigram Schindler*, 675 F. Supp. 2d at 633.  This regulation was not specifically addressed by the parties and, in any event, is not controlling for this Court.

i.     **Statutory Construction of Sections 134 and 145**

The plain meaning of 35 U.S.C. § 145 following the 1999 amendments demonstrates that only patent applicants have the right to challenge an adverse decision of the BPAI before a federal district court.

First, the 1999 amendments significantly changed 35 U.S.C. § 134 to refer specifically to the different substantive rights of patent applicants, patent owners, and third-party requesters. After the 1999 amendments, 35 U.S.C. § 134(a) refers to "patent applicants," while §134(b) refers to "patent owners," and § 134(c) refers to "third-party requesters."

Second, the 1999 amendments also changed 35 U.S.C. § 145 to refer solely to 134(a), indicating that the right to commence an action in district court was exclusively limited to "patent applicants."  *See* 35 U.S.C. § 145 (2006).  Thus, pursuant to the doctrine of *expressio unius est exclusio alterius*, under 35 U.S.C. 145, only a "patent applicant," not a patent owner, may seek district court review of an adverse decision of the BPAI.  *See Reyes-Gaona v. North Carolina Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001) ("[T]he doctrine of *expressio* [*unius*] *est exclusio alterius* instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded."); *see also Slattery v. United States*, 635 F.3d 1298, 1327-28 (Fed. Cir. 2011) (en banc) (applying doctrine of *expressio unius est exclusio alterius*); *Albany Engineering Corp. v. FERC*, 548 F.3d 1071, 1076 (D.C. Cir. 2008) (same).

By amending section 145 to reference only section 134(a), the 1999 amendments indicate that only patent applicants, and not patent owners, possess the right to seek district court review of a BPAI decision.  A report from the House of Representatives about the same amendment to section 145 in an earlier proposed bill confirms that this is what Congress intended: "appeals

under § 145 may only be initiated by patent applicants, and not by a patent owner or a third-party requester who is a participant in a reexamination proceeding." H.R. Rep. No. 104-784, at 81 (1996); Def.'s Reply at 5. Thus, patent owners, such as the plaintiffs, are entitled to Federal Circuit appellate review of an *ex parte* reexamination proceeding under sections 141 to 144 of the Patent Act, but not district court review under section 145. *See, e.g.*, *Desert Palace Inc. v. Costa*, 539 U.S. 90, 98 (2003) (where "the words of the statute are unambiguous, the judicial inquiry is complete.") (citations and quotation marks omitted); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (citations and quotation marks omitted); *Rubin v. United States*, 449 U.S. 424, 430 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.") (citations and quotation marks omitted). The logic of *Joy Technologies*, construing "patent applicants" to include "patent owners," is no longer applicable because the plain meaning of section 145 indicates otherwise. "[V]iewing section 145 as a whole," as the court did in *Joy Technologies*, 751 F. Supp. at 235-36, it is clear that only a patent applicant may bring a civil action under section 145.[9]

### ii.    The 1999 Amendment to Section 145 is Relevant

Plaintiffs do not attempt to reconcile this reading of section 145 with their argument that this Court has jurisdiction. Instead, plaintiffs urge the Court to disregard the fact that section 145 does not grant a right of action to patent owners as "irrelevant." Pls.' Mem. at 15. They further argue that "[s]ection 145 has never itself granted any such right." *Id*. But plaintiffs do not, and cannot, show how the amended section 145 can still be read as providing an option for district

---

[9] The defendant points out other places in the Patent Act where Congress refers only to "section 134" rather than "section 134(a)." Def.'s Reply at 6. This further reinforces that Congress must have intended section 145 to refer to section 134(a), which refers only to patent applicants, not patent owners.

court review for "patent owners" when it explicitly states that it applies to section 134(a), the provision that refers exclusively to "patent applicants."

### iii.    The Limitation in Section 141 Applies to Review of BPAI's Adverse Decision

Additional support for this Court's reading of the Patent Act is found in 35 U.S.C. § 141. There, the Patent Act plainly states that "[a] patent owner . . . who is in *any reexamination proceeding* dissatisfied with the final decision in an appeal to the [BPAI] under section 134 may appeal the decision only to the United States Court of Appeals for the Federal Circuit."  35 U.S.C. § 141 (2006) (emphasis supplied).  The plaintiffs suggest that this limitation applies only to *inter partes* reexamination, not *ex parte* reexamination, but this argument is unavailing for two reasons.  Pls.' Mem. at 15.  First, the defendant argues convincingly that section 141 applies to "any" reexamination proceeding.  As the defendant explains, it is notable that "Congress did not attempt to limit the scope of the sentence regarding patent owners to a particular type of reexamination by modifying the phrase 'reexamination proceeding' with either '*ex parte*' or '*inter partes*;' to the contrary, it used the broad term 'any.'"  Def.'s Mem. at 7 (emphasis omitted).  The Court agrees.  "The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive."  *Barseback Kraft AB v. United States*, 121 F.3d 1475, 1481 (Fed. Cir. 1997) (citations omitted).   Thus, in section 141, Congress explicitly limited a patent owner's right to appeal or challenge an adverse decision in "all" or "every" reexamination proceeding to appeals to the Federal Circuit.

Second, between the 1999 amendments and the 2002 amendment to section 141, this provision made no reference whatsoever to *inter partes* reexamination proceedings.  As noted, *supra*, section 141 authorized patent owners to appeal "only to the United States Court of Appeals for the Federal Circuit."  35 U.S.C. § 141 (2000).  The reference to *inter partes*

proceedings was inserted in 2002 to expand the rights of third parties to appeal a ruling of patentability not only to the BPAI, as provided in the 1999 amendments to section 134(c), but also, and only, to the Federal Circuit.  *See* 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, § 13106(c) (2002) (inserting in section 141 the phrase ", or a third-party requester in an inter partes reexamination proceeding, who is" after "patent owner").

The plaintiffs also argue that, while section 141 means that patent owners may only "appeal" to the Federal Circuit, patent owners may still commence a "civil action" under the provisions of section 145.  Pls.' Mem. at 15-16.  As the defendant indicates, "[t]he flaw in this argument is readily apparent" when comparing the first two sentences of section 141 with the third sentence.  Def.'s Reply at 3.  While the first two sentences grant patent applicants a dual track for appeals with alternative rights to appeal an adverse BPAI decision to the Federal Circuit, or to bring a civil action under section 145, the third sentence grants a patent owner the right "only" to appeal to the Federal Circuit.  *Id.*  The Court is convinced that "[t]he placement of this new sentence immediately after the discussion regarding patent applicants leaves no doubt that the judicial-review rights granted patent owners are meant to contrast with the rights granted patent applicants."  Def.'s Reply at 3-4.  There is no dual track for patent owners.  While the patent applicant may appeal to the Federal Circuit *or* bring a civil action, patent owners may "only" appeal to the Federal Circuit.[10]

---

[10] The next sentence of section 141 also prohibits simultaneous review in the Federal Circuit and in the district court in the case of Board decisions in interference proceedings.  Thus, as the defendant points out, "for both patent applicants and parties to interferences, § 141 addresses Federal-Circuit appeal as an alternative to district-court review.  But for patent owners in reexaminations, § 141 addresses only their right to a Federal-Circuit appeal and makes no mention at all of any corresponding right of district court review."  Def.'s Reply at 4 n.2 (emphasis omitted).

### iv.    Section 306 Must Be Read Consistently with Sections 141-145

The plaintiffs also suggest that this Court has jurisdiction under section 306 regardless of whether it has jurisdiction under sections 141 and 145.  Pls.' Mem. at 15.  The plaintiffs argue that the plain language of 35 U.S.C. § 306 allows plaintiffs to maintain a civil action because the statute states that patent owners may commence a civil action in federal district court "under the provisions of" section 145, not merely "appeal" under sections 141 to 144.  Pls.' Mem. at 13. The Court finds this argument unavailing.  While the 1999 amendments did not alter the text of section 306, section 306 must be read *in pari materia* with the amended sections 134, 141, and 145.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must . . . interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole") (internal citations and quotation marks omitted).  Indeed, as the plaintiffs themselves emphasize, "[w]hen there are two acts upon the same subject, the rule is to give effect to both if possible."  Pls.' Mem. at 15 (*quoting United States v. Borden Co.*, 308 U.S. 188, 198 (1939)); *see also Mail Order Ass'n of America v. United States Postal Serv.*, 986 F.2d 509, 515 (D.C. Cir. 1993) (same); *Regular Common Carrier Conf. v. United States*, 820 F.2d 1323, 1329 (D.C. Cir. 1987) (same).

To give effect to the statutory provisions here, the Court understands section 306 as providing "that patent owners in *ex parte* reexamination proceedings are entitled to whatever judicial review is available 'under' the current provisions of §§ 141 and 145."  Def.'s Mem. at 9. In other words, section 306 "should be read to permit court review to the extent that such review is permitted under these sections, *i.e.*, subject to any limitations and qualifications that Congress may from time to time add to them."  Def.'s Reply at 7 (emphasis omitted).  These sections allow *patent applicants* to seek this Court's review of adverse BPAI decisions under § 134(a).

They do not allow patent owners to seek this Court's review of *ex parte* reexamination decisions under § 134(b).  Furthermore, section 141 makes clear that the plaintiffs, as patent owners, may appeal an adverse decision in "any reexamination proceeding . . . *only* to the United States Court of Appeals for the Federal Circuit."  35 U.S.C. § 141 (emphasis added).  Thus, section 306 does not provide this Court jurisdiction over the plaintiffs' claims.

The amended sections 141 and 145 are obviously in some "tension" with section 306. *Sigram Schindler*, 675 F. Supp. 2d at 633.  Prior to the 2011 amendments, section 306 continued to reference judicial review under these sections, although section 141 provides that patent owners may appeal an adverse BPAI decision "*only* to the United States Court of Appeals for the Federal Circuit," and section 145 applies by its terms only to patent applicants.  The Court finds, however, as explained *supra*, that, when read *in pari materia* with sections 141 and 145, section 306 provides no jurisdiction for this Court to review the plaintiffs' claims.  Any other reading of section 306 would be incompatible with the express terms of the post-1999 amended sections 141 and 145.

### v.    Plaintiffs' Section 315 Arguments are Unavailing

Finally, the plaintiffs argue that if Congress intended to limit the judicial review rights of patent owners in *ex parte* reexamination proceedings it would have structured 35 U.S.C. § 306 as it structured 35 U.S.C. § 315, which enumerates the judicial review rights of patent owners in *inter partes* reexamination proceedings.  Pls.' Mem. at 14.  In section 315, Congress authorized a patent owner to "*appeal* under the provisions of [s]ections 141 through 144."  *Id*.  The plaintiffs note that the phrase "court review" in the text of section 306 is broader than the phrase "appeal" in section 315.  Plaintiffs contend that section 315 thus "shows that Congress well knows how to write a judicial review statute that provides for judicial review only by way of 'appeal' to the

Court of Appeals, and 35 U.S.C. § 306 is clearly not such a statute." *Id*.  This argument is ultimately not persuasive because the plaintiffs do not, and cannot, reconcile this reading of section 306 with the plain language of sections 141 and 145.

### C.  Additional Support for the Plain Meaning of the Statute

The plaintiffs emphasize that Congress must have intended for patent owners to have the choice to file a "civil action" because it is such a well-established legal right.  *See id*.  Plaintiffs contend that the 1999 amendments were merely "conforming" amendments, intended to implement the provisions of 35 U.S.C. §§ 311-318 related to *inter partes* reexamination.  *Id*. at 11.  The legislative history, however, tells a different story.  An examination of legislative proposals leading up to the 1999 amendments, as well as more recent Congressional amendments, confirm that the 1999 amendments to sections 134, 141 and 145 were no mere housekeeping measures, as the plaintiffs suggest.  Instead, the 1999 amendments were grounded in Congress' broader efforts to streamline the patent reexamination process, and reflected Congress' interest in making the *ex parte* reexamination system a viable alternative to litigation in the district courts.  Additional changes to the Patent Act in 2011 are the true "housekeeping" measures here.  They clarify any ambiguity left by the 1999 amendments, and confirm for the Court that Congress intended the 1999 amendments to remove this Court's jurisdiction over patent owners' *ex parte* reexamination claims.

### i.     Congressional Intent to Streamline the Reexamination System

The 1999 amendments were reforms grounded in Congress' ongoing efforts to streamline and improve the reexamination system in the Patent and Trademark Office in order to make it a "more viable" alternative to litigation.  S. Rep. No. 105-42, at 57 (1997).  The reexamination system was created in 1980 to provide "an inexpensive alternative to judicial determinations of

patent validity," and to "[allow] further access to the legal and technical expertise of the [PTO] after a patent has issued."  John R. Thomas and Wendy H. Schacht, *Patent Reform in the 110th Congress: Innovation Issues*, Congressional Research Service, at 30 (2008); *see also* H.R. Rep. No. 96-1307(I), at 3 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6462-63 ("The reexamination of issued patents could be conducted with a fraction of the time and cost of formal legal proceedings and would help restore confidence in the effectiveness of our patent system . . . It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner."); Charles E. Miller and Daniel P. Archibald, *How the Senate Patent Reform Bill Would Abridge The Right Of Judicial Review In Patent Reexaminations – And Why It Matters*, 3 No. 2 Landslide 21, 23 (Nov./Dec. 2010) (noting that "Congress's stated purpose in establishing patent reexamination was to strengthen investor confidence in the certainty of patent rights by creating a system of administrative reexamination of doubtful patents" and that "the use of reexamination has become a recognized administrative adjunct to patent litigation" for patent owners) (citations and quotation marks omitted).

The legislative history demonstrates that as early as 1994, Congress was considering amendments to the reexamination system consistent with the 1999 amendments.  Some of these amendments were crafted in response to the criticism that the reexamination system was perceived to be unfair to third parties due, *inter alia*, to the fact that only patent owners, and not third-party requesters, were allowed to appeal reexamination determinations.  Review of the legislative precursors to the 1999 amendments, as well as amendments after 1999, provides additional support for the Court's view of the plain meaning of the statute.

a.    *Legislative Precursors to the 1999 Amendments*

At least seven bills introduced in the House of Representatives and the Senate in 1994, 1995, 1996, and 1997 sought to give both patent owners and third-party requesters the right to appeal adverse decisions of a patent examiner to the BPAI and to the Federal Circuit.  These legislative precursors to the AIPA all proposed changes to sections 134, 141, 145, and 306, providing patent owners and third-party requesters the right to appeal to the Federal Circuit, and not to federal district court.  *See* The Patent Reexamination Reform Act of 1994, S. 2341, 103d Cong.; The Patent Reexamination Reform Act of 1995, H.R. 1732, 104th Cong.; Patent Reexamination Reform Act of 1995, S. 1070, 104th Cong.; Moorhead-Schroeder Patent Reform Act, H.R. 3460, 104th Cong. (1996); Omnibus Patent Act of 1996, S. 1961, 104th Cong.; 21st Century Patent System Improvement Act, H.R. 400, 105th Cong. (1997); Omnibus Patent Act of 1997, S. 507, 105th Cong.[11]  All of these bills proposed, *inter alia*, amending: (1) section 306 to state, in 306(a), that patent owners involved in reexamination proceedings may "appeal under the provisions of section 134 of this title, and may appeal under the provisions of sections 141 to 144 of this title . . ."; (2) section 306 to state, in 306(b), that third-party requesters may "appeal under the provisions of section 134 of this title, and may appeal under the provisions of sections 141 through 144 of this title"; (3) section 141 to say that patent applicants, patent owners, and third-party requesters "dissatisfied with the final decision in an appeal to the [BPAI] . . . may appeal the decision to the United States Court of Appeals for the Federal Circuit"; (4) section 134 to

---

[11] None of these bills was enacted, but, as discussed *infra*, the substance of these bills was reflected in the 1999 amendments.

refer to patent applicants in 134(a), patent owners in 134(b), and third-party requesters in 134(c); and, finally, amending (5) section 145 by adding an "(a)" after "section 134."[12]

As noted, these proposed amendments to the Patent Act provided for parallel appeals rights for patent owners and third-party requesters that limited review of adverse BPAI decisions to the Federal Circuit.  *See, e.g.*, Patent Reexamination Reform Act of 1995, Hearing on H.R. 632, H.R. 1732, and H.R. 1733 Before the H. Comm. on Courts and Intellectual Property, 104th Cong. (1995) (statement of Gary L. Griswold, Director of the PTO) ("We agree with the approach taken by [H.R. 1732] of giving both the patent owner and the third party a right to appeal to the Federal Circuit and giving neither of them a right to *de novo* review of a reexamination proceeding in the U.S. District Court for the District of Columbia.  The right of appeal should induce more third parties to use reexamination."); *id*. (statement of Michael K. Kirk, Executive Director, American Intellectual Property Law Association) ("pleased" that H.R. 1733 adopted the American Intellectual Property Law Association's recommendations to reform the existing reexamination system to provide "that neither patent owner nor third party requesters be given the right to challenge the outcome in a reexamination proceeding by filing a civil action in district court . . ."); *id*. (statement of Andrew Kimbrell, Executive Director, International Center for Technology Assessment) (acknowledging that the proposed reexamination system reforms would make reexamination "an effective alternative to litigation").

**b.**    ***The Further Evolution of the 1999 Amendments***

In 1999, Rep. Howard Coble introduced H.R. 1907, entitled the "American Inventors Protection Act of 1999."  American Inventors Protection Act of 1999, H.R. 1907, 106th Cong. This bill proposed changes to sections 134, 145, and 306 that were nearly identical to the

---

[12] The Patent Reexamination Reform Act of 1994, S. 2341, 103d Cong., did not include this proposed change to section 145 when it was introduced in the Senate, but this proposed change was included in the version of the bill that passed the Senate.

proposed amendments introduced in the 1994, 1995, 1996, and 1997 bills.  Specifically, it

amended section 306 to state, in 306(a), that "[t]he patent owner involved in a reexamination

proceeding  . . . may appeal under the provisions of section 134, and may appeal under the

provisions of sections 141 through 144 . . ."  H.R. 1907 also amended section 306 to state, in

306(b), that a third-party requester may "appeal under the provisions of section 134, and may

appeal under the provisions of sections 141 through 144 . . ."  Furthermore, H.R. 1907 also

included the same changes to sections 134 and 145 that had been included in the proposed bills

dating back to 1994.  The proposed amendment to section 141 in H.R. 1907, however, was

notably different than the proposed bills in 1994, 1995, 1996, and 1997.  Instead of providing

that patent applicants, patent owners, and third-party requesters "dissatisfied with the final

decision in an appeal to the [BPAI] *may* appeal the decision to the United States Court of

Appeals for the Federal Circuit," the proposed amendment of section 141 in H.R. 1907 stated

that "[a] patent owner or third-party requester in a reexamination proceeding dissatisfied with the

final decision in an appeal to the [BPAI] may appeal the decision *only* to the United States Court

of Appeals for the Federal Circuit."  American Inventors Protection Act of 1999, H.R. 1907,

106th Cong. (as introduced) (emphasis added); *see also* H. Rep. 106-287(I), at 59-60 (1999)

("Proposed [§] 306 prescribes the procedures for appeal of an adverse PTO decision by the

patent owner and the third-party requester.  Both the patent owner and the third-party requester

are entitled to appeal to the Patent Board of Appeals and Interferences ([§] 134 of the Patent Act)

and to the U.S. Court of Appeals for the Federal Circuit ([§§] 141-144); either may also be a

party to an appeal by the other.  Neither party is entitled to the alternative to a Federal Circuit

appeal that a patent owner has under current law – which is a civil action under [§] 145 of the

Patent Act.").

After H.R. 1907 was reported out of committee, however, changes were made to the
Committee-reported version of the bill before it was considered on the floor of the House.  These
changes created the tension between sections 134, 141, and 145 and section 306 that is the
subject of this jurisdictional analysis.  The bill was considered on the floor of the House with
amendments that restricted the rights of third-parties to administrative appeals only to the BPAI,
with no right of appeal to the Federal Circuit.  This restriction of a third party's right to appeal a
BPAI determination only administratively was reflected in the removal of all amendments to
section 306.  This change did not go unnoticed and prompted an explanation by the bill's sponsor
that the removal from the Committee-reported bill of a third party requestor's right to appeal to
the Federal Circuit "was done for the benefit of the independent inventors to balance the interest
of a third party with those of a . . . patentee . . . ."  145 Cong. Rec. H6942 (daily ed. Aug. 3,
1999) (statement of Rep. Coble).  There is no indication or comment in the legislative history
that the removal of the amendments to section 306 in any way changed the patent owners' right
to appeal from what was intended in H.R. 1907, as it was introduced in the House and reported
by the House Judiciary Committee.  This is unsurprising because, regardless of what happened to
section 306, the amendments most pertinent to patent owners' right to appeal remained wholly
intact in sections 134, 141, and 145.

The amendments to sections 134, 141, and 145 introduced in H.R. 1907 were the same
amendments considered on the House floor and the same amendments that ultimately passed the
House on August 4, 1999.  *See, e.g.*, 145 Cong. Rec. 29972 (1999) (statement of Senator Lott)
("[S]ection 141 states that a patent owner in a reexamination proceeding may appeal an adverse
decision by the Board of Patent Appeals and Interferences *only* to the U.S. Court of Appeals for
the Federal Circuit . . .") (emphasis added).  The proposed amendments to sections 134, 141, and

145 were ultimately included in the Intellectual Property and Communications Omnibus Reform Act of 1999.  The Court is satisfied that these amendments removed this Court's jurisdiction over a patent owner's claim following an adverse BPAI decision, and that it was Congress' intent to do just that.[13]

While neither party addresses the legislative history in any depth, the plaintiffs make one legislative history argument, namely that the 1999 amendments were meant to leave "existing *ex parte* reexamination procedures in Chapter 30 of title 35 intact . . . ."  Pls.' Mem. at 11; 145 Cong. Rec. 29972 (1999) (statement of Senator Lott); H.R. Rep. No. 106-464, at 133 (1999) (Conf. Rep.).  These statements regarding the 1999 amendments leaving the "existing *ex parte* reexamination procedures" intact are easily reconciled with the Court's conclusion about the removal of jurisdiction to hear appeals by patent owners dissatisfied with the outcome of appeals to the BPAI in *ex parte* reexamination proceedings.  The issue before the Court is the right of a patent owner after the BPAI has rendered a decision, not the administrative *ex parte* reexamination procedures themselves.

As noted above, the AIPA's revocation of a patent owner's right to bring a civil action in the district court was consistent with Congressional intent to make reexamination proceedings more efficient, and seems to have been squarely aimed at reducing the uncertainty and litigation costs of the patent system.  Removing this Court's jurisdiction to revisit reexaminations may also be viewed as an estoppel measure aimed at preventing parties from receiving a "second bite of the apple," or being allowed to present evidence in the district court that was not presented to the PTO during the initial patent application process or in a subsequent reexamination proceeding. *See, e.g.*, S. Rep. No. 110-259, at 19, 22 (2008) (discussing the "severe estoppel provisions"

---

[13] As discussed *infra*, in 2011, Congress ultimately amended section 306 to remove reference to section 145, as was outlined in Rep. Coble's proposed legislation in 1999.

enacted in 1999 with respect to *inter partes* reexamination as well as concern about parties filing multiple post-grant review petitions).  Congress' decision to change the judicial review rights of patent owners in 1999 accords with its goals of promoting efficiency in the reexamination system.  While the plain language of the statute is sufficient for this Court to conclude it does not have jurisdiction, the broader legislative history confirms that conclusion.

        c.        **2011 Amendments**

A Congressional amendment subsequent to the *ex parte* reexamination at issue in this case only provides further support for the Court's reading of the plain meaning of the statute.  In 2011, Congress amended section 306 to remove the reference to section 145 and to reference only sections 141 to 144 of the Patent Act.  *See* Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011) ("(A) In General – Section 306 of title 35, United States Code, is amended by striking '145' and inserting '144.'")).  The AIA amendments became effective September 16, 2011, and are not retroactive.  Congress made clear that this most recent amendment was made "to conform [§ 306] to the changes made by S 4605 of the American Inventors Protection Act of 1999."  H.R. Rep. No. 112-98(I), at 77 (2011).  This "conforming" amendment provides additional support for this Court's conclusion.

The plaintiffs argue that this latest amendment only "exposes the emptiness of the Government's assertion that [the 1999 amendments] supposedly already provided for" this amendment.  Pls.' Mem. at 14 n.9.  On the contrary, the 2011 amendment does not indicate that Congress was making a new change in the rights provided under section 306 but only "conforming" the language of the statute to the changes already made in 1999.  *See*, *e.g*., 157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) (statement of Sen. Kyle) ("It is fairly apparent, however, that [the authority for a patent owner to seek relief by civil action under section 145]

was intended to be eliminated by the amendments made by section 4605 of the American

Inventors Protection Act of 1999, Public Law 106–113, to sections 134 and 141 of title 35.  The

2010 managers' amendment simply maintained the AIPA's changes to sections 134 and 141 . . .

Section 5(h)(2) of the present bill [also] eliminates [any] ambiguity by striking the citation to

section 145 from section 306 of title 35.").  Accordingly, this Court concludes that it lacks

subject matter jurisdiction to hear the plaintiffs' claims.

### D.  Request For Transfer to the Federal Circuit

The plaintiffs request that this case be transferred to the Federal Circuit in the event that

this Court finds that it lacks subject matter jurisdiction.  Transfers to cure a lack of jurisdiction

are governed by 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court

finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer

such action or appeal to any other such court in which the action or appeal could have been

brought at the time it was filed or noticed . . .").  The statute instructs that a court shall transfer

the case if it is in the interest of justice to do so.  *See Sigram Schindler*, 675 F. Supp. 2d at 639.

Here, the plaintiffs filed the Complaint in good faith based on the status of the law before the

1999 amendments.  *See id.* ("provided that [the plaintiff] in good faith files a civil action in the

D.C. District Court within sixty days of the BPAI's issuance of an adverse decision, [the

plaintiff] will still be afforded an appeal in the Federal Circuit in the event that the D.C. District

Court determines that it lacks jurisdiction under § 306 and transfers the case to the Federal

Circuit 'in the interest of justice' pursuant to § 1631.").  Additionally, the defendant has not

opposed the plaintiffs' request for transfer.  *See* Def.'s Reply at 10.

While both parties indicate that, if this Court finds that it does not have jurisdiction, a

transfer would be appropriate, the Court recognizes that this is an unusual transfer, from a district

court to a court of appeals.  By transferring this case, this Court does not in any way pre-judge the Federal Circuit's own determination about whether it has jurisdiction over this lawsuit.

Accordingly, the plaintiffs' request to transfer the case to the Federal Circuit is granted.

## IV.   CONCLUSION

For the reasons discussed above, the defendant's Motion to Dismiss is granted and the case shall be transferred to the U.S. Court of Appeals for the Federal Circuit under 28 U.S.C. § 1631.  An Order consistent with this Opinion shall be entered.

DATED: March 5, 2012                                   /s/ *Beryl A. Howell*
                                                                       BERYL A. HOWELL
                                                                       United States District Judge